**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

John Cameron

    v.                                    Civil No. 16-cv-343-LM
                                       Opinion No. 2017 DNH 032
X-Ray Professional Association, et al.


**O R D E R**

    This dispute arises from an employment relationship gone
awry.  Plaintiff John Cameron, M.D., alleges that he lost his
job as a radiologist after coworkers unlawfully accessed and
circulated his private instant messaging history, which
apparently contained disparaging remarks about their business.
Cameron brought this action in federal court against his former
employer and six former coworkers.  Defendants move to dismiss,
arguing that a forum selection clause in Cameron's employment
contract requires him to bring these claims in New Hampshire
state court.  Cameron objects.  On February 6, 2017, the court
heard oral argument on defendants' motion.

**Standard of Review**

    In the First Circuit, a motion to dismiss based on a forum
selection clause is treated as a motion to dismiss for failure
to state a claim under Federal Rule of Civil Procedure 12(b)(6).
Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d

41, 46 (1st Cir. 2014).  Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations and internal quotation marks omitted).  In ruling on the motion, the court may consider "documents the authenticity of which are not disputed by the parties, documents central to plaintiffs' claim, and documents sufficiently referred to in the complaint."  Claudio-de León, 775 F.3d at 46 (internal quotation marks omitted).

## Background

Defendant X-Ray Professional Association ("X-Ray") is a medical imaging corporation comprised of approximately 15 radiologists.  In 2005, X-Ray hired Cameron, a board-certified radiologist, as a partnership-track employee.  Cameron was induced to join X-Ray, in part, "by promises that he would become a shareholder after 3 years of employment and would be eligible to buy into the membership of [Concord Imaging Center, LLC] ("CIC") after serving 1 year as an X-Ray PA shareholder."  Doc. no. 1 at ¶ 14.  CIC is the company that owns the medical imaging equipment used by X-Ray, and X-Ray shareholders own 50

percent of CIC.  Cameron eventually became a shareholder of X-Ray and later became a member of CIC.  He entered into a buy-in agreement with other X-Ray shareholders regarding his CIC membership interest ("CIC Agreement").

On January 1, 2010, Cameron entered into an Amended and Restated Shareholder Physician Employment Agreement with X-Ray ("Employment Agreement"), which replaced any previously signed employment contracts.  See doc. no. 11-2.  The Employment Agreement is "the entire and complete Agreement concerning the employment arrangement" between Cameron and X-Ray.  Id. at ¶ 21. The Employment Agreement is broad in scope and generally sets forth the conditions of Cameron's employment, including terms on employment duties, confidential information, and termination. The agreement contains a forum selection clause that states the following:

> Any and all disputes between the parties hereto arising from, caused by or in any way related to this Agreement, which have not been resolved by the parties through negotiation, with or without mediation, shall be resolved by litigation venued in the New Hampshire state courts.

Id. at ¶ 27(a) (emphasis added).

In 2013, Cameron began using Google's instant messaging service, Gchat, to discuss personal and business matters with several of his colleagues at X-Ray.  Cameron occasionally

discussed his frustrations with X-Ray's business operations.
Cameron accessed Gchat through his personal Gmail account.

On August 8, 2014, two X-Ray shareholders, Douglas K.
Ewing, M.D., and Joseph G. Venus, M.D., told Cameron that they
had seen his chats and informed him that his employment would
need to be terminated.  In October 2014, a different X-Ray
shareholder, Daniel Tyler Zapton, M.D., told Cameron that he
accessed Cameron's personal account and obtained his chat
history.  Cameron alleges that Zapton accessed his chat history,
without authorization, from either his work-issued laptop or his
computer station at X-Ray.  Cameron further alleges that Zapton
printed and distributed more than a year's worth of his private
Gchat history to the other X-Ray shareholders.  In December
2014, X-Ray terminated Cameron's employment, effective February
6, 2015.  On February 3, 2015, the shareholders held a meeting,
without Cameron present, and provided a third-party consultant
with a copy of Cameron's chat history.

On July 27, 2016, Cameron filed a complaint in this court
against X-Ray and six individual shareholders: Zapton, Venus,
Ewing, Timothy J. McCormack, M.D., Mark A. Hadley, M.D., and
Richard J. Waite, M.D. (collectively, the "Physician
Shareholders").  Cameron asserts seven claims: (1) Violation of
the Stored Communications Act, 18 U.S.C. § 2701; (2) Violation
of RSA 570-A; (3) Invasion of Privacy, Intrusion on Seclusion;

4

(4) Invasion of Privacy, Public Disclosure of Private Facts; (5) Wrongful Termination; (6) Breach of Fiduciary Duty; and (7) Breach of Contract.  On October 7, 2016, defendants filed the instant motion to dismiss.  Doc. no. 11.

## Discussion

Defendants contend that this action must be dismissed because Cameron's claims are controlled by the forum selection clause contained in the Employment Agreement and consequently must be filed in New Hampshire state court.  Defendants have "the burden of demonstrating that: (1) the parties entered into a valid contract of which the forum selection clause was an agreed-to provision, (2) the clause is mandatory and (3) the clause governs the claims asserted in the lawsuit." Expedition Leather LLC v. FC Organizational Prods. LLC, No. 11-cv-588-JL, 2013 WL 160373, at *3 (D.N.H. Jan. 15, 2013) (citations and internal quotation marks omitted).  Cameron does not dispute that the Employment Agreement is valid or that the forum selection clause is mandatory and enforceable.  Rather, he argues that the forum selection clause does not govern his claims against defendants because those claims are not "related to" the Employment Agreement.  Thus, the parties' dispute

centers on whether the forum selection clause governs Cameron's claims in this lawsuit.[1]

"[I]t is the language of the forum selection clause itself that determines which claims fall within its scope." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009). Here, the forum selection clause covers disputes that are "in any way related to" Cameron's Employment Agreement.  The First Circuit has interpreted the phrase "related to" in forum selection clauses to be very broad in scope.  See Huffington v. T.C. Group, LLC, 637 F.3d 18, 22-23 (1st Cir. 2011).  The phrase "related to" is synonymous with other embracing language, such as "with respect to," "in connection with," and "associated with."  See id. at 22.  The First Circuit has explained that these phrases are broader in scope than the term "arising out of" and broader than the concept of a causal connection.  Id. Claims are "related to" an agreement if they are "connected by reason of an established or discoverable relation."  See id. (citations omitted).  Thus, claims may be "related to" a

---

[1] At oral argument, the parties agreed that their dispute should be decided under federal common law.  See Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993).  In any event, the parties acknowledged that the New Hampshire Supreme Court and the First Circuit have adopted the same standard for analyzing the applicability and scope of forum selection clauses.  See Hansa Consult of N. Am. v. Hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 54-55 (2011) (applying First Circuit approach to whether non-contractual claims "arise under" the contract).

particular agreement although they seek to enforce rights that do not arise directly out of the agreement.  See id. at 22-23.

Cameron asserts seven claims against defendants.  The seven claims fall into two categories of conduct: (1) claims concerning Cameron's termination (Counts V–VII); and (2) claims concerning the unauthorized access of Cameron's private instant messaging history (Counts I–IV).  The court must determine whether these claims fall under the broad scope of the forum selection clause.

I.   Claims Concerning Employment Termination (Counts V-VII)

Cameron alleges three claims concerning his employment termination: wrongful termination against X-Ray (Count V); breach of fiduciary duty against X-Ray and the Physician Shareholders (Count VI); and breach of the CIC Agreement against the Physician Shareholders (Count VII).

Count V alleges that X-Ray terminated Cameron's employment out of bad faith, malice, or retaliation as a result of Cameron's private communications concerning the business operations of X-Ray.  Count VI alleges that X-Ray and the Physician Shareholders breached fiduciary duties they owed Cameron by terminating his employment without a legitimate business reason.  Count VII alleges that the Physician Shareholders failed to pay Cameron dividends and monies owed

pursuant to the CIC Agreement, presumably because he was
wrongfully terminated.

Cameron argues that his claims are not subject to the forum
selection clause because they exist independent of the
Employment Agreement and do not require reading or interpreting
any language in the agreement to determine defendants'
liability.  Cameron's argument might be persuasive if the forum
selection clause used a narrower phrase, such as "enforce rights
under," "arise under," or "derive from" this agreement, rather
than the broad phrase "in any way related to" this agreement.
While Cameron's claims do not directly invoke any rights or
provisions in the Employment Agreement, the broad forum
selection clause in this case encompasses claims that are
factually connected to Cameron's employment relationship
evidenced by the Employment Agreement.  See Slater v. Energy
Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1331 (11th Cir. 2011)
(claims "relating to" employment contract include all claims
arising "directly or indirectly" from the employment
relationship evidenced by the contract); Cf. Chebotnikov v.
LimoLink, Inc., 150 F. Supp. 3d 128, 131 (D. Mass. 2015) ("As a
general matter, disputes 'arising under,' 'arising out of,' or
'arising from' the terms of an agreement must have their
inception in the agreement itself, instead of merely being
related to the agreement or the relationship of the parties.").

Counts V-VII are all based on the allegedly wrongful termination of Cameron's employment.  The Employment Agreement defines the scope of Cameron's employment relationship with X-Ray and includes specific provisions governing Cameron's termination.  Although Cameron does not allege a breach of the Employment Agreement, his claims are premised on the termination of a relationship governed by the Employment Agreement. Therefore, these claims are clearly "related to" the Employment Agreement and thus subject to the forum selection clause.[2]

## II.   Claims Concerning Invasion of Privacy (Counts I-IV)

Cameron alleges four claims against X-Ray, Zapton, and Venus concerning the unauthorized access of his private instant messaging history.  He asserts two statutory claims—violations of the Stored Communications Act (Count I) and RSA 570-A (Count II)—and two invasion of privacy tort claims (Counts III and IV). "[C]ourts have held that tort and statutory claims may 'relate to' a contract and fall within the scope of a forum selection

---

[2] Although Count VII does not specifically reference Cameron's termination, this claim appears to allege breach of the CIC Agreement for failure to pay dividends and monies owed to Cameron based on his termination.  Even if unrelated to Cameron's termination, this claim is factually premised and equally dependent on Cameron's relationship with X-Ray.  Cameron was only eligible to become a member of CIC and sign the CIC Agreement because of his employment relationship with X-Ray, which the Employment Agreement governs.  Thus, this claim is factually connected to the Employment Agreement and falls under the broad "in any way related to" language.

clause, even if the complaint contains no explicit contract claims." Bagg v. HighBeam Research, Inc., 862 F. Supp. 2d 41, 45 (D. Mass. 2012) (citing Huffington, 637 F.3d at 22-23) (further citations omitted).  "In the setting of an employment contract, a forum selection clause governs tort claims that arise out of the existence of the contract." Optasite, Inc. v. Robinson, Civ. No. 07-40023-FDS, 2007 WL 2259106, at *2 (D. Mass. July 31, 2007) (citations omitted); see also Huffington, 637 F.3d at 22 ("[A] suit is 'with respect to' the agreement if the suit is related to that agreement—at least if the relationship seems pertinent in the particular context.").

Counts I-IV are premised on the same factual allegations: Zapton and Venus accessed Cameron's private instant messaging history, without authorization, and distributed the content of those messages to other X-Ray shareholders and a third-party consultant.  Zapton allegedly accessed Cameron's instant messaging history from either Cameron's work-issued laptop or his computer station at X-Ray.  Thus, the conduct underlying these claims resulted directly from Cameron's employment relationship with X-Ray.[3]  And, again, the Employment Agreement

---

[3] In fact, Cameron's complaint asserts that "the actions giving rise to the claims at issue arose out of employment and business relationships based in New Hampshire . . . ."  Doc. no. 1 at ¶ 12.

covers the entire employment relationship between Cameron and X-Ray.

Although these statutory and tort claims may not invoke specific contractual rights, they result from Cameron's employment relationship with X-Ray and are thereby "in any way related to" his Employment Agreement.  Compare Slater, 634 F.3d at 1331 (employee's discrimination and retaliation claims related to employment contract that governed "the entirety of the employment relationship" between the parties) with Yevak v. Nilfisk-Advance, Inc., No. 5:15-cv-05709, 2016 WL 538333, at *3 (E.D. Pa. Feb. 11, 2016) (employee's discrimination and retaliation claims not related to employment agreement that was "designed to protect the Company's Confidential Information, business relationships, and competitive advantage").

Cameron cites Yevak to support his argument that his claims are not related to the Employment Agreement.  2016 WL 538333.  In Yevak, the plaintiff signed an agreement "designed to protect the Company's Confidential Information, business relationships, and competitive advantage."  Id. at *1.  Thus, the agreement in Yevak was narrow in scope.  However, the forum selection clause within the agreement was broadly worded: "The parties agree that any litigation in any way relating to this Agreement shall be venued in either federal or state court in Minnesota . . . ."  Id. at *2.  The court held that plaintiff's disability and age

11

discrimination claims were not subject to the broadly worded forum selection clause because they were in no way related to the narrow scope of the agreement.  See id. at *3.

Here, by contrast, the scope of Cameron's Employment Agreement is broad and covers the entirety of his employment relationship with X-Ray.  Thus, in this case, unlike Yevak, a broadly worded forum selection clause is located within an agreement that is extremely broad in scope.  The specific facts underlying Cameron's invasion of privacy claims——that certain shareholders obtained Cameron's instant messages through his work-issued laptop or X-Ray computer station——occurred explicitly in the context of Cameron's employment relationship with X-Ray. These allegations are so closely linked to Cameron's employment relationship with X-Ray, which is evidenced by Cameron's broad Employment Agreement, that the relationship between the Employment Agreement and Cameron's invasion of privacy claims is "pertinent in the particular context" of this dispute. Huffington, 637 F.3d at 22.  For these reasons, Counts I-IV relate to the Employment Agreement and are governed by the forum selection clause.

III. Claims Against Shareholders

Cameron asserts that even if the forum selection clause encompasses his claims against X-Ray, it does not capture his

claims against the Physician Shareholders because the
shareholders are not parties to the Employment Agreement.[4]
However, a non-party may be bound by a forum-selection clause
where that party is so "closely related to the dispute such that
it becomes foreseeable that it will be bound." Hugel v. Corp.
of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) (citations and
internal quotation marks omitted); see also Holland Am. Line,
Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007)
("[W]here the alleged conduct of the nonparties is closely
related to the contractual relationship, a range of transaction
participants, parties and non-parties, should benefit from and
be subject to forum selection clauses." (internal quotation
marks omitted)).  "While it may be true that third-party
beneficiaries of a contract would, by definition, satisfy the
'closely related' and 'foreseeability' requirements, a third-
party beneficiary status is not required." Hugel, 999 F.2d at
209 n.7 (internal citations omitted).

     Here, although the Physician Shareholders did not sign
Cameron's Employment Agreement, they are closely related to his
contractual relationship with X-Ray and the factual allegations
underlying this dispute.  The Physician Shareholders shared a
common interest in X-Ray and signed identical employment

---

     [4] Every claim other than wrongful termination (Count V) is
alleged against one or more of the Physician Shareholders.

agreements containing the same forum selection clause.  <u>See</u> doc.
no. 16-1.  In fact, Cameron's Employment Agreement referenced
the "agreements inter se among [Cameron] and the other
Shareholder Physicians of [X-Ray] to execute and enter into this
[Employment Agreement] . . . ."  Doc. no. 11-2 at 2 of 19.  The
Physician Shareholders and X-Ray are so closely related—and the
individual employment agreements are so interconnected—that it
was reasonably foreseeable the Physician Shareholders would
benefit from the forum selection clause to the same extent as X-
Ray.  Moreover, the individual shareholders were allegedly
responsible for Cameron's termination and the other conduct
alleged in his complaint.[5]  Thus, the Physician Shareholders are
so "closely related" to the dispute at hand that they are
equally subject to the forum selection clause in the Employment
Agreement.  Finally, it would be impractical to bifurcate
identical claims against X-Ray and the individual Physician
Shareholders.  The interests of justice and judicial economy are

---

[5] Specifically, Ewing and Venus allegedly told Cameron "we
saw your chats," and "informed him that the shareholders were
going to need to plan an exit strategy for his departure from X-
Ray PA."  Doc. no. 1 at ¶ 24.  Further, Zapton allegedly
informed Cameron that "he accessed Cameron's personal account
and obtained his chat history."  <u>Id.</u> at ¶ 25.  Finally, Cameron
alleges that his chats "were obtained through the coordinated
effort of Zapton and Venus and were printed by Zapton when he
accessed Cameron's computer."  <u>Id.</u>

best served if these claims proceed against all defendants in a single forum.

In sum, every count alleges claims that are "in any way related to" Cameron's Employment Agreement, and thus subject to the forum selection clause.  Based on the forum selection clause, Cameron was required to bring these claims in New Hampshire state court.  Accordingly, the court must dismiss the entire complaint.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss (doc. no. 11) is granted, without prejudice to plaintiff's right to refile in state court.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 21, 2017

cc:   Zachary W. Berk, Esq.
      George M. Boucher, Esq.
      Michael S. Lewis, Esq.
      Robert Terry Parker, Esq.